IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

SAMANTHA REED-RAJAPAKSE,           )
                                   )
        Plaintiff,                 )
                                   )
vs.                                )        No. 12-2807-JDT-dkv
                                   )
MEMPHIS LIGHT, GAS, AND WATER      )
dba MLGW; JERRY COLLINS; THE       )
CITY OF MEMPHIS; A.C. WHARTON,     )
                                   )
        Defendants.                )

_____

REPORT AND RECOMMENDATION OF DISMISSAL
AND
ORDER DENYING RELIEF SOUGHT IN DOCKET ENTRY 23
AND
ORDER STRIKING DOCKET ENTRY 42

_____

On September 18, 2012, the plaintiff, Samantha Reed-Rajapakse ("Rajapakse"), filed a *pro se* complaint alleging violation of various Tennessee Code Annotated provisions as well as of "her Constitutional Rights" against four defendants: (1) Memphis Light, Gas, and Water d/b/a MLGW; (2) Jerry Collins, president of MLGW; (3) the City of Memphis; and (4) A.C. Wharton, mayor of Memphis. (Compl., D.E. 1.)  On September 19, 2012, the court issued an order granting Rajapakse leave to proceed *in forma pauperis*, (Order, D.E. 3), and referred the case to the *pro se* staff attorney for screening.  This case has now been referred to the United States Magistrate Judge for

management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Order of Referral, D.E. 45.) For the reasons that follow, it is recommended that this case be dismissed.

## I.   PROPOSED FINDINGS OF FACT

Rajapakse's original complaint is styled as a "COMPLAINT FOR VIOLATION OF FAIR BILLING ACT, VIOLATION OF FRAUD AND DECEPTIVE PRACTICES AGAINST CUSTOMERS."[1] (Compl., D.E. 1.) In it, Rajapakse alleges that Memphis Light, Gas, and Water ("MLGW") violated Tennessee Code Annotated sections 36-32-104, 65-23-103, 65-26-102, 65-26-104, 47-18-101, and 47-18-104 in the course of billing and collecting on her utilities account. (*Id.* at 2.) No certificate of service is included within or attached to the original complaint, and no summonses were ever issued or returned.[2]

The original complaint alleges that in November of 2010, the City of Memphis ("the City") undertook an initiative to assist certain low-income MLGW customers by paying $500.00

---

[1]     On the docket sheet, the complaint is designated a "PRO SE COMPLAINT Pursuant to 42 U.S.C. § 1983."

[2]     In one of her early filings in this case, Rajapakse insisted that the defendants "were served with a copy of the [original] complaint by hand on the date it was filed," (*see* D.E. 12 at 4), but, contrarily, she states in a later filing that her complaint "has not been served to the original parties," (*see* D.E. 42 at 2). MLGW maintains that it has never been served with a copy of the original complaint. (*See* D.E. 11-1 at 4.)

toward each recipient's utility bill. (*Id.*) According to the original complaint, the City committed $2 million toward the initiative, and it was determined that the aid would be dispersed among MLGW customers whose names appeared on a list of food-stamp recipients in Shelby County. (*Id.* at 4.) The original complaint alleges that MLGW then "just went down the list and gave everyone [the $500.00] credit," without regard for the $2 million cap. (*Id.*) According to the original complaint, "[w]hen MLGW realized they [sic] had went [sic] over the budget from the City of Memphis, [t]hey went back and . . . place[d] the money back on the accounts of the customers" who were initially awarded the assistance. (*Id.*)

The original complaint alleges that the amount due on Rajapakse's May 2011 utility bill was inexplicably high, totaling $1,400.00.[3] (*Id.* at 3.) According to the original complaint, Rajapakse contacted "MLGW Customer Care" to inquire about the bill, and she was initially informed the increase was due to her "home usage." (*Id.*) Dissatisfied with that explanation, Rajapakse allegedly continued to contact MLGW about the billing issue and, according to the original complaint, on "the tenth call," it was explained that the increase on Rajapakse's bill reflected the application of two charges: one

---

[3] Later in the complaint, Rajapakse alleges that the balance on her bill was $1,735.00. (*See* Compl., D.E. 1 at 4.)

representing the renegation of the $500 aid from the City and another to account for a credit-card payment—previously made on Rajapakse's account—that was returned declined. (*Id.*)

The original complaint alleges that Rajapakse disputed the additional charges, claiming she was not aware of nor had she invited or accepted any assistance on her utilities bill from the City of Memphis and claiming she never made the declined credit-card payment, which purports to have been toward her February 2010 utilities bill, and instead paid that bill in cash "in person at a window" at the MLGW office. (*Id.*) The original complaint alleges that MLGW failed to adequately investigate her claims and refused to provide her with documentary evidence of the disputed credit-card transaction. (*Id.*)

At some point later, according to the original complaint, a meeting took place at which were present Memphis City Council members Janis Fullilove and Harold Collins; their assistant, Daniel Spears; Rajapakse; and an individual named Clint Richardson ("Richardson"), who appeared on behalf of MLGW. (*Id.* at 4.) The original complaint alleges that, at the meeting, Richardson admitted that MLGW had gone back and charged $500 to customers, including Rajapakse, whose accounts had earlier been credited in the same amount as part of the City's aid initiative. (*Id.*) The original complaint further alleges that

Richardson acknowledged at the meeting that MLGW had no information on the alleged declined credit card, including who owned the card and which bank issued the card. (*Id.*) The original complaint alleges that, based on MLGW's admission of wrongdoing, "[i]t was [then] suggested that MLGW write off [Rajapakse's] balance," but that Richardson indicated that "the call had to come from" Jerry Collins, the president of MLGW ("Collins" or "President Collins"). (*Id.*) According to the original complaint, Rajapakse subsequently attended an MLGW board meeting where she addressed the board regarding the billing dispute on her account. (*Id.* at 5.) The original complaint alleges that after the board meeting, President Collins informed Rajapakse of his conclusion that MLGW had committed no wrongdoing in billing on her account, and he instructed her that she would remain obligated to pay the balance due on her account. (*Id.*)

Rajapakse further asserts, in her original complaint, that the City of Memphis "violates [Rajapakse's] Constitutional Rights by not allowing another company to come into the City of Memphis in given [sic] her a choice of services and therefore is forced to pay for services from MLGW," which company the original complaint alleges subjects its customers to "continuous billing errors, false meter reading[s] . . . and billing errors that are not resolved timely." (*Id.* at 6.) The original

complaint also alleges, purportedly as a constitutional violation, that MLGW does not randomly or routinely check, "for possible theft," the "credit" of its employees who handle customer accounts, with the result being that MLGW employees get away with misappropriating payments and customers end up responsible for the lost payments. (*Id.*) It is also alleged, again purportedly as a constitutional violation, that A.C. Wharton, mayor of Memphis ("Wharton" or "Mayor Wharton"), appointed Collins as president of MLGW but has "refuse[d] to take any action over his appointee in allegations presented by customers." (*Id.* at 7.) It is further alleged that Mayor Wharton "has informed MLGW customers that [MLGW] is a private company instead of telling [them] MLGW is a public company." (*Id.*) In addition, the original complaint alleges that Mayor Wharton has knowledge of continued complaints of wrongdoing against MLGW, but "has taken no action to investigate or request the investigation into the wrongdoing." (*Id.*)

Rajapakse seeks (1) an "immediate injunction" prohibiting MLGW from disconnecting her utilities services for six months or until the resolution of this case; (2) an order instructing MLGW to credit Rajapakse's account to the extent of MLGW's "proven wrongdoing" and to "cease deceptive practices and billing;" (3) an order instructing MLGW to credit Rajapakse's account $50.00 for each time it poorly or falsely read her meter causing

"[in]accurate billing and higher usage;" and (4) punitive damages against the City for "neglect for protecting [Rajapakse] from wrongdoing from MLGW for refusal to correct their billing causing financial and emotional damages."[4] (*Id.* at 9.)

On October 9, 2012, Rajapakse filed a document styled "Amend Complaint and Seek Reconsideration of Preliminary Injunctive Order," in which she, *inter alia*, states that she "wants to [a]mend the complaint to include" claims under the "Sherman Anti Trust Act," the "Clayton Anti Trust Act," and "the U.S. Constitution Amendment 9." (D.E. 6 at 1.) At the end of this document, Rajapakse specifically requests that "[t]he court accepts her amend complaint." (*Id.* at 7.) The document includes a certificate of service, and MLGW acknowledges having been served with a copy of this document on October 18, 2012, (*see* D.E. 11-1 at 4).

On October 29, 2012, MLGW filed a Motion to Dismiss or Alternatively to Stay, seeking dismissal of the complaint based on Rajapakse's lack of standing by reason of her then-recently

---

[4]    In an order dated October 3, 2012, the presiding district judge ruled that Rajapakse could not prosecute this case as a class action "or otherwise on behalf of other similarly situated individuals." (Order Construing and Denying Motion for Class Certification, D.E. 5 at 2.) As such, in construing Rajapakse's prayer for relief here, the court has ignored any and all portions wherein Rajapakse seeks relief for individuals other than herself.

filed chapter 13 bankruptcy petition.  (D.E. 11.)   Rajapakse
filed a response in opposition to the motion.  (D.E. 12.)

On November 9, 2012, Rajapakse filed a document styled
"Plaintiff Motion to Assert Separate Clause before the Court,"
accompanied by two attachments, each identical to the other,
each styled "Amend to Add Party Deprivement of Rights by the
Defendants under 18 U.S.C. § 1983."  (D.E. 16.)   In the motion
itself, Rajapakse states that she "has filed a Deprivement of
Rights against the Defendants and has added a new Defendant . .
. Stephanie Green-Cole."  (*Id.* at 1.)   In the attachments to
the motion, Rajapakse begins by stating that she "submit[s] to
the court . . . a civil action to amend against Stephanie G.
Cole, an individual."  (D.E. 16-1 at 1.)   Rajapakse then sets
forth allegations against this individual, "Stephanie G. Cole"
("Cole")—whom she asserts was hired to represent the interests
of MLGW in Rajapakse's bankruptcy action—for "violation of
Plaintiff [sic] Constitutional Rights and her oath of Upholding
the U.S. Constitutional [sic], fraud, false information, and
deception, in being secure in her home and the right to
happiness by providing false information to a . . . Federal
Judge in swaying the outcome of the verdict" in the bankruptcy
action.  (*Id.* at 1-2.)   At the end of these documents (the
attachments), Rajapakse: prays that Cole "be added to the
Complaint and amended to the Deprive of Right complaint," "be

sued with Memphis Light Gas and Water and as an individual," and "be served on in [her] private capacity; seeks damages against Cole; and prays that Cole and the other previously named defendants "cease and desist against Plaintiff until all litigation has been processed." (*Id.* at 6.)  On November 20, 2012, MLGW filed a response in opposition to this, Rajapakse's "Motion to Assert Separate Clause before the Court." (D.E. 17.)

On January 8, 2013, Rajapakse filed a document styled "Plaintiff Motion against Defendants Memphis Light Gas and Water a Division a Public Municipal Utility Corporation Doing Business under the City of Memphis for Violation of Title 18 of 1964 Civil Rights Act against Customer." (D.E. 23.)  In it, she reiterates and summarizes the same basic factual allegations from her original complaint and previous filings.  However, she also attempts to raise new allegations against MLGW for retaliation.  Specifically, she states that MLGW is "using [its] services as a retaliation against her for filing a complaint before this court." (*Id.* at 4.)  At the end of the document, she prays that "[t]he court accepts this motion as a new charge against" the original four defendants "as whole and in their private capacity." (*Id.*)  MLGW filed a response in opposition to this motion on January 14, 2013.  (D.E. 27.)

Also on January 14, 2013, MLGW filed an "Answer to Plaintiff's Amended Complaint and Counterclaim against Samantha

Reed Rajapakse," (D.E. 25), as well as a motion to dismiss pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure, (D.E. 26). In each of these two filings, MLGW refers to Docket Entry 6 as "Plaintiff's Amended Complaint," and treats that document as the operative complaint in the case. Accordingly, the motion to dismiss addresses only Rajapakse's Sherman Act and Clayton Act claims and seeks dismissal of them based on the application of certain immunities. (*See* D.E. 26.) Rajapakse did not file a response to the motion to dismiss, but on January 25, 2013, she filed a document styled "Partial Summary Judgement [sic] against Defendants in Deprivation of Rights under 1983 Deprivation of Rights," wherein she vaguely addresses MLGW's immunity arguments. (*See* D.E. 35.)

On March 18, 2013, Rajapakse filed two documents, each largely similar to the other in substance, styled "Amend to Add Party Deprivement of Rights by the Defendants Under 18 U.S.C. § 1983," (D.E. 41), and "Plaintiff Opposition of Defendants Counter Claim Deprivation of Rights by Defendants Memphis Light Gas and Water and Jerry Collins Under Seeking Trebile Damages Against Memphis Light Gas and Water and Jerry Collins [and] Motion Seeking Immediate Injunctive Order against Defendant," (D.E. 42), respectively. In the first of these documents, Rajapakse states that she "submit[s] to the court . . . under 18 USC 1983 a civil action to amend against Clint Richardson, an

individual," whom she asserts is Manager of Customer Relations at MLGW, "for violation of Plaintiff Constitutional Rights . . . by using his position in a government capacity to commit, fraud, false information, and deception, depriving Plaintiff in being secure in her home and the right to happiness." (D.E. 41 at 1.) She then sets forth factual allegations against Richardson concerning his handling of the dispute over her MLGW account. (*Id.* at 2-4.) In Docket Entry 42, Rajapakse purports to "submit to the court . . . amend to add, Clint Richardson, Manager of Memphis, Light, Gas, and Water (MLGW) as a defendants of her complaint in his business and private capacity of deprivation of her rights." (D.E. 42 at 1.) She goes on to summarize the same factual allegations against Richardson contained in Docket Entry 41, laying out Richardson's alleged involvement in MLGW's wrongdoing and requesting that Richardson "be added on the complaint" "for his involvement in violat[ing]" Tennessee Code Annotated sections 65-4-111(a), 39-16-401(1)&(2), 39-6-402(b), 39-16-501(2), and 65-4-122(c)&(d). (*Id.* at 2-5.)

The court held a status conference on April 26, 2013. There, the court denied as moot MLGW's first motion to dismiss (D.E. 11). Also, at the conference, Rajapakse requested to withdraw the motion she had filed as Docket Entry 41, and the court granted her request and terminated that motion. All other motions were to remain as pending, and the parties were

instructed not to file any additional documents or pleadings until the magistrate judge completed an initial screening of the case and filed a report and recommendation pursuant to the screening.[5]

## II. PROPOSED CONCLUSIONS OF LAW

### A. 28 U.S.C. § 1915(e)(2) Screening

The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). This report and recommendation will constitute the court's screening.

For purposes of the court's screening, the court will consider Rajapakse's complaint to contain the following: (1) the original complaint (D.E. 1); (2) Docket Entry 6 ("Amend Complaint and Seek Reconsideration of Preliminary Injunctive Order") to the extent it expounds upon the factual allegations of the original complaint and alleges additional claims and seeks relief under federal antitrust law; and (3) the document

---

[5]     Also discussed at the status conference were the nature and effect of MLGW's appearance in the case despite its (MLGW's) position that it had not been properly served with process. It was determined that MLGW's appearance was of a "limited" nature, as opposed to being a "general appearance," and that neither MLGW nor any of the other defendants were required to answer any pleadings "due to summons not being issued." (*See* D.E. 55.)

styled "Amend to Add Party Deprivation of Rights by the Defendants under 18 USC § 1983," which was filed as an attachment to Docket Entry 16, (*see* D.E. 16-1).

Rajapakse's filing of Docket Entry 6 presents a somewhat peculiar scenario in that she sought effectively to amend her original complaint before it was ever served. A similar scenario was addressed by the Fifth Circuit in *Prince v. Curry*, 423 F. App'x 447 (5th Cir. 2011). There, approximately one month after filing an original complaint but before completion of service of the original complaint, a *pro se* plaintiff filed a self-styled "motion to supplement," which the district court essentially ignored in conducting its initial 28 U.S.C. § 1915(e) screening. On appeal, the Fifth Circuit held that the district court erred in failing to treat the factual allegations in the plaintiff's motion to supplement "in the same manner as [it would treat] allegations contained in an amended complaint." *Id.* at 451. "[I]n accordance with the liberal construction of *pro se* filings," the Fifth Circuit in *Prince* then reexamined whether the plaintiff had stated a claim by reference now to the factual content of the original complaint together with that of the motion to supplement. *Id.; see also Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983)(stating that the district court should have "look[ed] beyond the [plaintiffs'] formal complaint to consider as amendments to the complaint those materials

subsequently filed"). Similarly, here, the court will regard the original complaint together with the antitrust claims and other factual matter asserted in Docket Entry 6 as collectively constituting Rajapakse's First Amended Complaint. In that way, Docket Entry 6 functions as an addendum to the original complaint.

The document styled "Amend to Add Party Deprivement of Rights by the Defendants under 18 USC § 1983," which Rajapakse filed as an attachment to Docket Entry 16, asserts factual allegations against Stephanie G. Cole and asks, in effect, that Cole be joined as a defendant in this case. In substance, it purports to amend the complaint to add Cole as a defendant. Rule 15(a) of the Federal Rules of Civil Procedure governs amendments and under subsection (1) of that rule, a party may "amend its pleadings once as a matter of course within . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1)(B).[6] Rajapakse's "Amend to

_____

[6] Strictly speaking, this rule applies only "if the pleading is one to which a responsive pleading is required." *See* FED. R. CIV. P. 15(a)(1)(B). As stated above, the court determined in the April 26, 2013 status conference that the defendants were not *required* to respond to any pleadings in this case as they had not yet been served with process. It is undisputed that the defendants were served with a copy of the document filed as Docket Entry 6. The original complaint, on the other hand, was at best only hand delivered to the defendants. Nonetheless, for purposes solely of construing Rajapakse's right to amend her

14

Add Party Deprivement of Rights by the Defendants under 18 USC § 1983" (hereinafter referred to as "Docket Entry 16-1"), which the court construes as an attempted amendment, was filed on November 9, 2012, within twenty-one days of service of MLGW's October 29, 2012 motion to dismiss.[7]  As such, the court will regard Docket Entry 16-1 as a timely amendment as a matter of course pursuant to Rule 15(a)(1)(B).

Having regarded Docket Entry 16-1 as an amendment as of right to Rajapakse's First Amended Complaint, the court must identify the contents of what is now Rajapakse's Second Amended Complaint.  Ordinarily, the filing of an amended complaint supersedes the original complaint, as well as any earlier-filed amended complaints, and renders them null.  *B & H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 267 n.8 (6th Cir. 2008).  However, this rule does not apply when the amended complaint incorporates by reference the earlier complaint.  *King v. Dogan*,

---

complaint here, the court will consider the original complaint to have been properly served on the defendants (even though in actuality it was only hand delivered to them) and will thereby regard Rajapakse's collective First Amended Complaint, a major portion of which *is* the original complaint, as a pleading "to which a responsive pleading is required" within the meaning of Rule 15(a)(1)(B).

[7]    Although MLGW's October 29, 2012 motion to dismiss does not state that it is brought pursuant to any Federal Rule of Civil Procedure, it is well established that dismissal of a case for lack of standing is a dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction.    *See Hooker v. Sasser*, 893 F. Supp. 764, 768 n.1 (M.D. Tenn. 1995).  As such, the motion to dismiss qualifies under Rule 15(a)(1)(B).

31 F.3d 344, 346 (5th Cir. 1994). In Docket Entry 16, Rajapakse asks the court to "consider the complaint in whole and each individual regarding this case," (D.E. 16 at 2), and in Docket Entry 16-1 requests that Cole "be added to the Complaint and amended to the . . . complaint" and "be sued with [MLGW]," (D.E. 16-1 at 6). These statements suggest that Rajapakse intended the allegations against Cole (contained in Docket Entry 16-1) to supplement, rather than supplant, the First Amended Complaint, and the court finds thereby that Rajapakse sufficiently incorporated by reference the allegations of the First Amended Complaint. *Cf. Privett v. Pellegrin*, 798 F.2d 470, at *1 n.1 (6th Cir. 1986)(unpublished table decision)(finding that an amended complaint effectively incorporated by reference the original complaint by stating that "the interests of justice will be served by this Court hearing at one trial, all the allegations contained in the Complaint and supplemental complaint"). Therefore, Docket Entry 16-1 shall join with the entirety of Rajapakse's First Amended Complaint to form her Second Amended Complaint in this case.

1. *Standard of Review for Failure to State a Claim*

In assessing whether the Second Amended Complaint states a claim upon which relief may be granted, the court applies the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79

(2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). "Accepting all well-pleaded allegations in the complaint as true, the court considers the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Willams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

Rule 8(a)(2) requires "[a] pleading that states a claim for relief" to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint violates these provisions when it "is so verbose that the Court cannot identify with clarity the claim(s) of the pleader and adjudicate such claim(s) understandingly on the merits." *Harrell v. Dirs. of Bureau of Narcotics & Dangerous Drugs*, 70 F.R.D. 444, 446 (E.D. Tenn. 1975); *see also Flayter v. Wis. Dep't of Corr.*, 16 F. App'x 507, 509 (7th Cir. 2001)(dismissing 116-page

complaint pursuant to Rule 8(a)(2)); *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994) (criticizing district court for declining to dismiss amended complaint with prejudice pursuant to Rule 8(a) and noting that "[a] complaint that is prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation"); *Plymale v. Freeman*, 930 F.2d 919 (table), 1991 WL 54882, at *1 (6th Cir. Apr. 12, 1991)(finding that district court did not abuse its discretion in dismissing with prejudice "rambling" 119-page complaint containing nonsensical claims); *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990)("A . . . complaint must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is presented and if so what it is. And it must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search of that understanding.")(citation omitted)(internal quotation marks omitted); *Michaelis v. Neb. State Bar Ass'n*, 717 F.2d 437, 438-39 (8th Cir. 1983)(per curiam)(affirming dismissal of 98-page complaint where "[t]he style and prolixity of these pleadings would have made an orderly trial impossible"); *Gordon v. Green*, 602 F.2d 743, 744-45 (5th Cir. 1979)(concluding that a 4000-page pleading, comprised of "various complaints, amendments, amended

amendments, amendments to amended amendments, and other related papers," did not comply with Rule 8(a) "as a matter of law"); *Windsor v. A Federal Exec. Agency*, 614 F. Supp. 1255, 1258 (M.D. Tenn. 1983)(noting that a 47-page complaint was excessive, in light of the purpose of a pleading to state a simple claim, as well as "confusing and distracting" and ordering plaintiff to amend his complaint to comply with Rule 8), *aff'd mem.*, 767 F.2d 923 (table), 1985 WL 13427 (6th Cir. June 27, 1985)(per curiam).

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading")(internal quotation marks omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510

(6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

2.  *Claim under 42 U.S.C. § 1983*

Rajapakse's Second Amended Complaint purports to allege a claim against the defendants under 42 U.S.C. § 1983.  Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

42 U.S.C. § 1983.  It provides a method of seeking redress of deprivation of federal constitutional rights and federal statutory rights. *Albright v. Oliver*, 510 U.S. 266 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the United States Constitution or federal statutory law, and (2) that the defendant deprived the plaintiff of this federal right under

color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

As to the first *prima facie* element, Rajapakse's Second Amended Complaint does not explicitly invoke any particular constitutional provisions nor any federal statutes in support of her section 1983 "Deprivement [sic] of Rights" claim.[8]  However because the court is required to liberally construe *pro se* filings, the court will construe the Second Amended Complaint as purporting to invoke the Fourteenth Amendment to raise a procedural due process claim for deprivation of property in relation to the disconnection of her utility services.[9]

---

[8]   In a different context, specifically in the course of laying out Rajapakse's antitrust claims, the Second Amended Complaint cites "Constitution Amendment 9."  The court does not regard this as an attempt to name a constitutional home for Rajapakse's section 1983 claim.  Regardless, the Ninth Amendment to the United States Constitution, which states "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people," is "not a vehicle for bringing civil rights claims" and therefore will not support a claim under section 1983.  *Richardson v. Sewerage & Water Bd.*, Civil A. No. 95-3033, 1996 WL 288275, at *2 (E.D. La. May 30, 1996); *see also Rynn v. Jaffe*, 457 F. Supp. 2d 22, 26 (D.D.C. 2006); *Coleman v. Parra*, 163 F. Supp. 2d 876, 886 (S.D. Ohio 2000).

[9]   It appears that at the time Rajapakse filed the original complaint as well as when she filed her First Amended Complaint, she was continuing to receive utility services from MLGW despite the ongoing billing dispute.  However, in the Second Amended Complaint, Rajapakse states that on October 17, 2012, her utility services were disconnected, presumably for nonpayment, and that MLGW and Cole have placed a "theft hold" on her account "barring her from . . . having her services restored."

The Fourteenth Amendment forbids a state from depriving any person of life, liberty, or property without due process of law. U.S. CONST. amend. XIV, § 1.  In procedural due process claims, "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional."  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)(citing *Parratt v. Taylor*, 451 U.S. 527, 537 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)).  Rather, it is the deprivation of the interest *without due process of law* that is unconstitutional.  *Id.*  In other words, "the constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process."  *Id.* at 126.

To proceed with a procedural due process claim, Rajapakse must have alleged (1) the deprivation of a protected property interest and (2) that, before being so deprived, she was not afforded the process due to her under the Fourteenth Amendment. *See Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 216 (6th Cir. 2011)(citing *Leary v. Daeschner*, 228 F.3d 729, 741 (6th Cir. 2000).

For Fourteenth Amendment protections to apply, Rajapakse must have a "legitimate claim of entitlement" to a continued receipt of her utility services.  *Board of Regents v. Roth*, 408

U.S. 564, 577 (1972). The United Supreme Court in *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1 (1978), a utilities-cutoff case against MLGW, squarely addressed that question, finding that the expectation of utility services rises to the level of a "legitimate claim of entitlement," and therefore is a property interest protected by the Fourteenth Amendment's Due Process Clause. *Id.* at 11. Under the authority of *Craft*, Rajapakse has a Fourteenth Amendment-protected property interest in continuing to receive her utility services.

Although the court has determined that the Fourteenth Amendment's due process protections applied to the termination of Rajapakse's utility services, the court cannot say that Rajapakse has alleged any inadequacies in the process she was afforded in relation to such termination. In her Second Amended Complaint, Rajapakse states that she has "exhausted all her remedies in the government going to the City of Memphis and the MLGW Board including addressing this concern to the City of Memphis Mayor, Wharton." (*See* D.E. 6 at 3.) To be sure, she expresses clear dissatisfaction with the *result* of the dispute-resolution process she exhausted, that is, she believes President Collins and MLGW reached the wrong conclusion when determining, at the end of the process, that she in fact owed the disputed amount. But, she does not allege either that she did not receive sufficient notice of procedures that she could

employ to dispute her bill or that the procedures allowed her did not comport with the dictates of due process.

In fact, the pretermination process that Rajapakse was afforded and which she outlines in her Second Amended Complaint is patently sufficient so far as concerns the Fourteenth Amendment. In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court enumerated three factors for courts to consider and balance in determining the "specific dictates of due process" in any given case: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and the administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 334-35. The Supreme Court applied its *Mathews* balancing test in *Craft* and concluded that due process required only that the plaintiffs-customers there be afforded "an opportunity to present their complaint to a designated employee empowered to review disputed bills and rectify error." *Craft*, 436 U.S. at 18-19. Importantly, the utility company "would retain the option to terminate service after affording this opportunity and concluding that the amount billed was justly due." *Id.* at 19.

Although Rajapakse alleges that Richardson lacked the authority to rectify billing errors, she admits that President Collins had the authority that Richardson lacked, that she was allowed an opportunity to present her complaint to President Collins at a meeting of MLGW's Board of Directors, and that she indeed so presented her complaint to him but that he ultimately determined the amount in dispute was justly due. The very process that Rajapakse alleges was afforded her is all the process that the Supreme Court has stated she is due under the Fourteenth Amendment.

Rajapakse's Second Amended Complaint does not sufficiently allege that she was deprived of the right to be free from deprivation of property *without due process of law* under the Fourteenth Amendment, or of any other rights secured by federal law. As such, she fails to state a plausible claim for relief under 42 U.S.C. § 1983 in relation to the termination of her utility services.[10]

3. *Sherman and Clayton Act Antitrust Claims*

Rajapakse's Second Amended Complaint purports to raise claims, presumably against MLGW and the City of Memphis, for

---

[10] The court cannot decipher from Rajapakse's Second Amended Complaint any section 1983 claims arising under any theory of deprivation other than the termination of her utility services. If Rajapakse wished to bring any such claim, she could and should have spelled it out in her complaint and cited the applicable constitutional provision or federal statute.

violation of "the Sherman and Clayton Anti Trust Act" based on "MLGW being the sole provider of [utility] services in which [sic] no competitor can come into this area to compete for services to its customers." (*See* D.E. 6 at 6.)   In a January 14, 2013 motion to dismiss, MLGW argued that these antitrust claims are barred by, *inter alia*, the judicially-created "state action doctrine." (*See* Mem. Supp. of MLGW's Mot. to Dismiss, D.E. 26-1.)   The court will consider this basis for dismissal below.

The "state action doctrine," as it is called, provides that antitrust law does not apply to states acting as sovereigns. *Jackson, Tenn. Hosp. Co., LLC v. W. Tenn. Healthcare*, Inc., 414 F.3d 608, 611 (6th Cir. 2005)(citing *Parker v. Brown*, 317 U.S. 341 (1943)).   However, this doctrine operates to shield political subdivisions of states from liability only when they act pursuant to a "clearly expressed state policy."  *Id.* at 611-12 (citing *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 40 (1985)).   "The state legislature need not explicitly authorize anticompetitive conduct, as long as anticompetitive effect would logically result from the authority granted by the state."  *Id.* at 612 (citing *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 372-73 (1991); *Hallie*, 471 U.S. at 41-42).

The Sixth Circuit applied these principles in *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527 (6th Cir.

2002), to hold that Michigan law, by empowering prisons to grant public contracts for the provision of telephone services, implicitly authorized anticompetitive conduct because such conduct was a logical result of the broad grant of authority.

The Tennessee General Assembly created and established MLGW in 1939 in chapter 381 of the Tennessee Private Acts of 1939 ("Private Act"). Section 1 of the Private Act amends the Charter of the City of Memphis and provides:

> any municipal utility system or systems heretofore or hereafter acquired by the City of Memphis for the manufacture, production, distribution, or sale of electricity, natural or artificial gas, or water, and the properties, agencies and facilities used for any such purpose or purposes, shall be under the jurisdiction, control and management of Memphis, Light, Gas and Water Division to be constituted and conducted as hereinafter set forth.

Tenn. Priv. Acts, 1939, ch. 381, § 1. The General Assembly granted to MLGW the power to

> construct, purchase, improve, operate and maintain, within the corporate limits of the City of Memphis or elsewhere within the limits of Shelby County, an electric plant or system . . . for the purpose of furnishing electric power and energy for lighting, heating, power or any other purpose for which electric power or energy can be used . . . .

*Id.* § 3. In sections 4 and 5 of the Private Act, the General Assembly granted similar authority to MLGW with regard to gas and water services. *Id.* §§ 4-5. Here, the state did more than just grant municipalities the authority to engage in conduct from which anticompetition would logically result, as was the

case in *Michigan Paytel*, but in fact the state of Tennessee cut out the middle man and itself engaged in the anticompetitive conduct by expressly creating MLGW and enabling it to serve as the exclusive utilities provider for Shelby County. As such, there can be no doubt as to the existence of a "clearly expressed state policy" pursuant to which MLGW operates and is thereby shielded from liability under the state action doctrine as to any claims arising under federal antitrust law. Accordingly, even accepting the allegations in the Second Amended Complaint as true, this court concludes that Rajapakse has not pled any plausible entitlement to relief under either the Clayton Act or the Sherman Act.

      4.   *Ninth Amendment Claim*

The Second Amended Complaint cites, without more, "the U.S. Constitution Amendment 9." Rajapakse sets forth no factual allegations in support of a claim arising under the Ninth Amendment. The Ninth Amendment "does not confer substantive rights in addition to those conferred by other portions of our governing law." *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991). Rather, it "was added to the Bill of Rights to ensure that the maxim *expressio unius est exclusio alterius* would not be used at a later time to deny fundamental rights merely because they were not specifically enumerated in the Constitution." *Id.* (citing *Charles v. Brown*, 495 F. Supp. 862,

863-64 (N.D. Ala. 1980)).  Accordingly, to the extent Rajapakse attempts to bring a claim under the Ninth Amendment, such a claim is without merit.

　　5.　*State-Law Claims*

　　Scattered throughout the Second Amended Complaint are various references to state statutes as well as what purport to be common-law grounds for relief.[11]  Specifically, Rajapakse asserts that MLGW violated T.C.A. §§ 36-32-104, 65-23-103, 65-26-102, 65-26-104, 47-18-101, and 47-18-104 in the course of billing, collecting on, and shutting down her utilities account, (D.E. 1 at 2); she states that Cole committed "fraud, false information, and deception," (D.E. 1-1 at 1); and she alleges that Wharton "has informed MLGW customers that [MLGW] is a private company instead of telling the customers MLGW is a public company," (D.E. 1 at 7).

　　a.　Claim for violation of T.C.A. § 36-32-104

　　In her Second Amended Complaint, Rajapakse asserts that MLGW violated T.C.A. § 36-32-104.  As no such statute is in existence, Rajapakse fails to state a claim under it.

　　b.　Claim for violation of T.C.A. § 65-23-103

---

[11]　Technically, it is unnecessary for the court to screen Rajapakse's state-law claims as they should be dismissed *sua sponte* for lack of subject-matter jurisdiction because there is no diversity of citizenship and the court has recommended dismissal of all of the federal claims in this case.

The Second Amended Complaint also purports to raise a claim against MLGW for violation of T.C.A. § 65-23-103, which provides for the establishment of a state agency known as the "Tennessee Rural Electrification Authority."[12]  T.C.A. § 65-23-103 provides no private right of action, and, as such, Rajapakse fails to state a claim under this statutory provision.

c.  Claim for violation of T.C.A. § 65-26-102

Rajapakse alleges that MLGW violated T.C.A. § 65-26-102, which relates to the setting of reasonable prices in the sale of gas.  This statute does not expressly provide for a private right of action and to the contrary it appears the Tennessee Regulatory Authority ("TRA") alone has the authority to regulate and enforce utilities pricing, *see* T.C.A. § 64-4-104.  However, MLGW, due to its status as a municipal utility, is exempt from regulation by the TRA.  T.C.A. §§ 7-34-117 & 7-34-106.  For all of these reasons, Rajapakse fails to state a claim under T.C.A. § 65-26-102.

d.  Claim for violation of T.C.A. § 65-26-104

In her Second Amended Complaint, Rajapakse states that MLGW violated T.C.A. § 65-26-104, which she titles "Contracts for Services."  However, in fact, section 65-26-104 is captioned

---

[12]  T.C.A. § 65-23-103 was repealed during the most recent legislative session, which repeal became effective July 1, 2013. *See* ch. 211, 2013 Tenn. Pub. Acts.

"Property; damage or tampering" and provides for liability and the assessment of a penalty to "any person [who] shall injure or destroy any portion of the gas fixtures, or other property belonging to the [utility] company, or shall willfully open a communication into the street or other gas pipes, or let on gas after it has been stopped by the company."  Rajapakse's Second Amended Complaint contains no facts that could possibly be construed as alleging that MLGW or any other defendant damaged or tampered with the gas-related property of a utility company in the manner set forth in section 65-26-104.  As such, Rajapakse fails to state a claim under that statutory provision.

e.   Claim for violation of T.C.A. § 47-18-101

Rajapakse asserts that MLGW violated § 47-18-101 "of the Consumer Protection Act of 1977."  Indeed, section 47-18-101 was enacted as part of the Tennessee Consumer Protection Act of 1977, but that particular provision does nothing more than declare that part 1 of chapter 18 of title 47 of the Tennessee Code "shall be known and may be cited as the 'Tennessee Consumer Protection Act of 1977.'"  Thus, it is clear the provision provides no private right of action, and, as such, Rajapakse fails to state a claim under it.

f.   Claim for violation of T.C.A. § 47-18-104

Rajapakse also asserts that MLGW violated § 47-18-104, which is also part of the Tennessee Consumer Protection Act of

1977 ("TCPA") and which prohibits the use of "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." T.C.A. § 47-18-104(a). A plaintiff pleading a TCPA claim generally has the burden to plead an "unfair or deceptive" act or practice and that such conduct caused an "ascertainable" loss. *See Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005). An "unfair or deceptive" act or practice is a "material representation, practice or omission likely to mislead a reasonable consumer." *Ganzevoort v. Russell*, 949 S.W.2d 293, 299 (Tenn. 1997).

TCPA claims are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Accordingly, "the 'unfair and deceptive acts' that make up the TCPA claim must be pled with 'specificity' and 'particularity.'" *Am. Serv. Grp., Inc. v. Zurich Am. Ins. Co.*, No. 3:10-CV-0616, 2011 WL 1884164, at *5 (M.D. Tenn. May 17, 2011). Rajapakse's purported TCPA claim fails to meet that standard. She has not alleged what the unfair or deceptive act or practice is that she claims violated the TCPA. As such, she has failed to state a claim under T.C.A. § 47-18-104. *Cf. Taylor v. Standard Ins. Co.*, No. 08-2585 V, 2009 WL 113457, at *5 (W.D. Tenn. Jan. 13, 2009)("[The plaintiff] has failed to allege any specific facts that support her conclusory allegations that [the defendant] employed any

unfair or deceptive business practices in evaluating her [insurance] claim.").

> g.  Claims against Cole for fraud, misrepresentation, and deception

Rajapakse's claims against Cole for "fraud, false information, and deception" stem from Cole's actions, as a private attorney, representing MLGW's interests in Rajapakse's chapter 13 bankruptcy proceeding. Rajapakse alleges that, "on the record before the . . . Bankruptcy court," Cole told the court that Rajapakse "did not have the right to be at the home" from which her services were disconnected, even though her name was on the recorded deed for that home and further that Rajapakse "had refused MLGW employees from her property," causing them to "contact Memphis Police." (D.E. 16-1 at 2 ¶¶ 4, 6-7, 14-15.)  Rajapakse also takes issue with Cole's statement to the bankruptcy court that MLGW was "really trying to get [Rajapakse's] services restored quickly." (*Id.* ¶ 13.)

In a filing made by MLGW in response to the motion (D.E. 16) in which Rajapakse purported to amend her complaint to add Cole as a defendant, MLGW argued that the court should not allow the proposed amendment because the claims against Cole were merely an attempt to relitigate the Petition of Adequate Assurance that MLGW filed in the bankruptcy proceeding, which petition was the subject of a hearing at which Cole made the

statements that Rajapakse characterizes as false, and the subject of a final decision and order by the bankruptcy judge, Judge David S. Kennedy. (*See* MLGW's Mem. of Law Opposing Pl.'s "Motion to Assert Separate Clause before the Court," D.E. 17 & Exs. A and B.) This court agrees. The court will not permit nor facilitate such a collateral attack. *Cf. In re Nicholas*, 457 B.R. 202, 218-19 (Bankr. E.D.N.Y. 2011*)*(citing res judicata as grounds for refusing to entertain plaintiff's fraudulent misrepresentation claim that was based on alleged misrepresentations made by the defendants in in a prior bankruptcy proceeding where the judge had allegedly relied on them in fixing a proof of claim amount). The proper redress for fraud on the court is the filing of an action under Rule 60(b) of the Federal Rules of Civil Procedure for relief from judgment. *See* FED. R. CIV. P. 60(b)(3)(recognizing "fraud . . . , misrepresentation, or misconduct by an opposing party" as grounds for relief from judgment).

Even if Rajapakse could proceed with her claims against Cole, she would nonetheless fail to state any claim upon which relief can be granted. Her allegations against Cole amount to, if anything, a claim under Tennessee common law for fraudulent misrepresentation.[13] The elements of such a claim are:

---

[13] The Tennessee Supreme Court has recognized that "intentional misrepresentation" and "fraudulent

> (1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented material fact; and (6) plaintiff suffered damage as a result of the misrepresentation.

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008). Rajapakse does not allege that she, as opposed to Judge Kennedy, relied on the statements made by Cole to the bankruptcy court in the hearing on the Petition of Adequate Assurance. For that reason alone, she has failed to state a claim against Cole for fraudulent misrepresentation.

h. Claim again Wharton for misrepresentation

In her Second Amended Complaint, Rajapakse alleges that Wharton has been misrepresenting to the general public that MLGW is a private utility company when in fact it is a public utility company. (*See* D.E. 1 at 7.) Whether construed as a claim for intentional/fraudulent misrepresentation or as one for negligent misrepresentation, Rajapakse fails to state a claim for relief as she fails to allege an essential element to either cause of action: injury. She does not state that she personally suffered

---

misrepresentation" require the same elements, which overlap with the elements of a common-law fraud claim. *See Hodge v. Craig*, 382 S.W.3d 325, 342 n.28 (Tenn. 2012). In fact, the court has stated that "'intentional misrepresentation,' 'fraudulent misrepresentation,' and 'fraud' are different names for the same cause of action." *Id.*

any injury as a result of the alleged misrepresentation on the part of Wharton.

B.    Rajapakse's Attempts to Amend her Second Amended Complaint

Having screened Rajapakse's Second Amended Complaint and determined it is subject to dismissal in full for failure to state a claim, the court now addresses whether Rajapakse is permitted to amend her Second Amended Complaint, as she has twice attempted to do.  The first of these attempts occurred on January 8, 2013, when she filed a document styled "Motion against Defendants [MLGW] a Division of Public Municipal Utility Corporation Doing Business under this City for Memphis for Violation of Title 18 of 1964 Civil Rights Act against Customer," which sought to add against the defendants a retaliation claim.  (D.E. 23.)   In filing this document, Docket Entry 23, Rajapakse did not include or attach any proposed amended complaint.   The court construes this document as a motion for leave to amend the Second Amended Complaint.

Rajapakse's failure to attach any proposed amended complaint that includes the proposed retaliation claim is grounds for denying her leave to amend.   "The court cannot evaluate the propriety of granting leave unless the court has had an opportunity to review the substance of the proposed amendment."   *Gulley v. Dzurenda*, 264 F.R.D. 34, 36 (D. Conn. 2010)(citing 3 James Wm. Moore et al., Moore's Federal Practice

¶¶ 15. 17[1] (3d ed. 2004)); *see also Harris v. City of Auburn*, 27 F.3d 1284, 1287 (7th Cir. 1994)(holding that in light of the requirement that the district court review the merits of the party's request for leave to amend, the party's failure to produce the proposed amended complaint demonstrated a lack of diligence or good faith)); *State Trading Corp. of India Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) (considering it a lack of good faith on the part of the plaintiff to "not file a proposed amended complaint" when it sought leave to amend); *Twohy v. First Nat'l Bank of Chicago*, 758 F.2d 1185, 1197 (7th Cir. 1985)(finding that failure to submit the proposed amendment or new pleading with the motion for leave to amend "indicates a lack of diligence and good faith"). Indeed, here, on that basis, the court denies Rajapakse's motion to amend her Second Amended Complaint for purposes of adding a claim for retaliation.

On March 18, 2013, Rajapakse again attempted to amend her Second Amended Complaint in a document styled "Plaintiff Opposition of Defendants Counter Claim Deprivation of Rights by Defendants Memphis Light Gas and Water and Jerry Collins Under Seeking Trebile Damages Against Memphis Light Gas and Water and Jerry Collins [and] Motion Seeking Immediate Injunctive Order against Defendant," wherein she stated that she sought to add Clint Richardson as a defendant in this case. (D.E. 42.)

Rajapakse has already withdrawn a motion she filed the same day under Docket Entry 41, which motion was virtually identical in substance to Docket Entry 42 and which sought essentially the same relief—namely, to add Clint Richardson as a defendant. As such, the court regards Docket Entry 42 as similarly withdrawn.

### III. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, it is recommended that the entirety of Rajapakse's Second Amended Complaint be dismissed for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. 1915(e)(2)(B)(ii), and *sua sponte* for lack of subject-matter jurisdiction as to the state-law claims.

Also, for the reasons stated above, Rajapakse's "Motion against Defendants [MLGW] a Division of Public Municipal Utility Corporation Doing Business under this City for Memphis for Violation of Title 18 of 1964 Civil Rights Act against Customer," (D.E. 23) is denied. As to Docket Entry 42, the clerk is ordered to strike the filing as it has effectively been withdrawn by the plaintiff.

IT IS SO ORDERED and respectfully submitted this 8th day of July, 2013.

s/ Diane K. Vescovo
Diane K. Vescovo
United States Magistrate Judge

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. FED. R. CIV. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.